UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UFUK U.,[1]<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, WARDEN OF CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | No. 1:26-cv-08465-TLN-CSK<br><br>A# 245-437-585<br><br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Ufuk U.'s ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 1.) Respondent filed an answer. (ECF No. 7.) For the reasons set forth below, the Petition is GRANTED and Respondent is ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL BACKGROUND

This matter arises out of Petitioner's constitutional challenge to his civil immigration detention without a hearing. (ECF No. 1.) Petitioner is a noncitizen who entered the United States without admission in November 2023 seeking asylum. (ECF No. 6 at 3; ECF No. 7-1 at 2.) Thereafter, the Department of Homeland Security detained Petitioner, initiated removal proceedings against him, and then released him from detention by an order of recognizance. (ECF No. 6 at 3; ECF No. 7-1 at 2; ECF No. 7-2 at 1.) Over the last nearly three years, Petitioner has lived in the United States, worked, paid taxes, and gotten engaged to a U.S. citizen. (ECF No. 6 at 3.) Petitioner applied for and received employment authorization with U.S. Citizenship and Immigration Services in 2025. (ECF No. 7-1 at 2.) Petitioner has no criminal history. (*Id.* at 3.)

On September 23, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner at a gas station. (ECF No. 7-1 at 2.) ICE did not provide any notice or a hearing at the time it detained Petitioner. (ECF No. 6 at 6; ECF No. 7 at 2; ECF No. 7-1 at 2.) Respondent detains Petitioner under 8 U.S.C. § 1226(a). (ECF No. 7 at 1.) Respondent acknowledges a "Form I-286 [initial custody determination] was filed with the immigration court to attempt to trigger a bond hearing" and expresses no objection to the Court ordering a bond hearing.[2] (ECF No. 7 at 2.) Petitioner has now been detained for one month without any custody hearing. (ECF No. 1 at 2.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

---

[2] The Court infers from this statement that Petitioner checked the Form I-286 box to request a custody re-determination hearing before an immigration judge.

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

The Court once again finds due process requires a custody hearing within a reasonable time and manner, and because the government has failed to provide any custody hearing in a month of Petitioner's detention, the government violated Petitioner's constitutional rights.

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps. First, a court asks whether there exists a protected liberty interest under the Due Process Clause. Second, the court examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A. Liberty Interest

At the first step, the Court finds Petitioner has a protected liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). A person's liberty interest may increase over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty

interest).

Petitioner has a clear liberty interest here. He has resided in the United States for close to three years, he worked in the United States with authorization prior to being detained, and he has a fiancée who is a U.S. citizen. Additionally, immigration authorities released Petitioner into the United States on his own recognizance. "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). The government makes no argument that Petitioner violated the conditions of his release. (*See* ECF No. 7.) Even if he is removable, or his liberty is revocable, due process still protects his liberty. *See Hernandez*, 872 F.3d at 992; *Zadvydas*, 533 U.S. at 693. Having found a liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

B. <u>Procedures Required</u>

At the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that Respondent's actions in detaining him unquestionably affect. The time Petitioner spent at liberty in the United States underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained for a month, separated from his fiancée, and unable to work. Petitioner also describes suffering from claustrophobia, being unable to maintain his physical health and hygiene, and

encountering delays in communicating with people outside the detention center because of his detention conditions. (ECF No. 6 at 9–11.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, in 2023, immigration authorities necessarily found Petitioner was not a danger or a flight risk when they released him from detention on his own recognizance. *See* 8 C.F.R. § 1236.1(c)(8). There is no alternate finding in the record, nor any argument that circumstances have changed, to override that finding. (*See* ECF No. 7.) Indeed, for three years, Petitioner lived in the community without acquiring any criminal convictions. (*See* ECF No. 7-1 at 2–3.) Moreover, Respondent does not contend Petitioner is a danger or a flight risk. (*See* ECF No. 7.) Without any showing by Respondent of a legitimate interest in detaining Petitioner or such a finding by a neutral arbiter, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest.

Moreover, Respondent failed to provide the procedural safeguards statutorily owed to Petitioner under 8 U.S.C. § 1226(a) and its implementing regulations. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). "[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from

the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (determining petitioner was likely to succeed on his claim of unlawful re-detention when ICE did not adhere to its regulations). Here, Respondent concedes Petitioner is entitled to a custody hearing under 8 U.S.C. § 1226(a) (ECF No. 7), but Respondent has not held or scheduled such a hearing in the month Respondent has held Petitioner in detention. Thus, Petitioner has been deprived of the procedural safeguards to which he is entitled. Without any procedural safeguards to determine whether his detention is justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025).

Finally, the government's interest in detaining Petitioner without a hearing is negligible, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Custody hearings are routine for the government. Indeed, a hearing is the very process owed to Petitioner under 8 U.S.C. § 1226(a). Any burden associated with providing this process is insignificant and does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation. Nor does Respondent claim the government would be unduly burdened by providing a bond hearing. (ECF No. 7 at 2 ("Respondent has no objection to the Court ordering a bond hearing be set.").)

Under the *Mathews* factors, the Court finds the government was required to provide Petitioner with pre-deprivation notice and a custody hearing to determine whether his detention was justified. 424 U.S. 319, 335 (1976); *see Julio Fernando R.P. v. Andrews*, No. 1:26-CV-05547-TLN-CSK, 2026 WL 2137758, at *2–*3 (E.D. Cal. July 24, 2026) (analyzing the *Mathews* factors and finding similarly). The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the

State could be expected to provide." *Id.* at 129. Respondent did not provide Petitioner with pre-deprivation process, and Respondent has not identified any reason Petitioner presents a "special case" and in any event concedes it has not provided or even scheduled a post-deprivation custody hearing in a month of detention. (ECF No. 7.) Petitioner has thus been deprived of an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Therefore, Petitioner is detained in violation of the Fifth Amendment.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. Further, IT IS HEREBY ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner Ufuk U. (A# 245-437-585) from custody on an order of release on recognizance. At the time of release, Respondent must return all of Petitioner's documents and possessions. Respondent must file a **notice of compliance** with this Order **within 2 court days of the date of this Order**.

2. Respondent is ENJOINED from re-arresting or re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government demonstrates by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present. Should Petitioner become subject to a final and executable order of removal, the government shall provide Petitioner a minimum of seven days' notice (counting from the date the removal order becomes final and executable) of any intent to execute the order and detain Petitioner.

3. Petitioner's Motion for Temporary Restraining Order and Amended Motion for Temporary Restraining Order (ECF Nos. 2, 6) are DENIED as moot.

4. The Clerk of Court is directed to serve this Order on **California City Detention**

**Center**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATE: October 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE